Arronius decision which allowed Greater Grace to open and to undermine the party's ongoing efforts to eliminate one-race schools in St. James Parish. The district court made three errors. First, it ignored this court's precedent in terms of the opening of new schools and it failed to apply any of the green factors when it was considering whether or not Greater Grace should open as a one-race school. How does it interfere with the injunction order specifically and the goal to achieve a unitary status? From your perspective, what is the interference? From our perspective, the interference is that several of the students who would otherwise be attending integrated schools, dozens of students who would otherwise be attending integrated schools are instead going to be attending the one-race Greater Grace and obviously increasing the number of one-race elementary schools also hampers desegregation efforts in the district. Now, in other words, the students that attend in the charter school may or may not be attending an integrated school. They could be attending one of the other three all-race schools. Well, we know for a fact that 34 of the students at the time that the charter was going to So, essentially, your position is then that the charter school cannot exist in this parish? No, Your Honor. Our position is that if the charter school is going to exist, it needs to exist as a desegregated school in the same way that the other schools do. But if it does, no, it can't do that in terms of what, as I understand your argument is, because to exist as an integrated school, it's got to draw white students from the school district, which has the effect of minimizing the unitary status of the district schools. So your argument comes down to essentially, it's a practical matter for sure, that the charter school cannot exist in this county. You may be right. I'm not arguing about that. But that's your argument. It seems to me that if you Your Honor, I respectfully disagree with that. I think our position is that Well, just tell me, just tell me. Yes, Your Honor. In other cases, in Union Parish and Tangipahoa Parish, charter schools have opened up, and the district courts have required those charter schools to meet desegregation standards. And in Union Parish, the charter school was required to open with at least a third minority population. In Tangipahoa Parish, they were required to meet a plus or minus 15 standard. And I think in the very least, this charter school needs to apply that same standard. It needs to bring in, it can attract students from across Those are different parishes. I'm talking about this parish and this school district. Yes, Your Honor. There are, well, 40% of the students Because your argument is that if it existed, it's going to draw students that otherwise would be attending integrated schools. And I, so you're not really talking about the school district so much as you're talking about the individual persons that are deprived the right of an integrated education. Well, that's what you're saying. Our primary concern, Your Honor, is for those students who are being deprived the right to an integrated education. Those are the students who are attending Greater Grace, those are the students who are attending the one race schools in the parish, and those are the students we're concerned about. One of the options, it doesn't, one of the options would be to close the school, of course, Your Honor, but there are other options short of that. Tell me what the other options are as a practical matter for that school to exist in St. James Parish. The school district could be subjected to a desegregation standard. It could be required to attract fewer than two dozen white students. Where is it going to get the 2,000 white students? Your Honor, there are, Unless there are other, I mean, except from the integrated schools that exist in the parish now. Well, the charter can attract students, obviously, from within the parish, but also from students outside the parish, and there's no, you know, requiring that a school open as an integrated school doesn't necessarily mean that another school will be less integrated than before. Why isn't what you're saying an argument for this multi-parish charter, purely voluntary school to not be subject to the old but continuing consent decree? Our argument is that it should be subjected to the continuing consent decree. Our concern is, again, that this charter, Well, a consent decree doesn't address charter schools. There weren't any. The desegregation order does address new schools, so any new school that opens up in the parish. New schools in the district. It has nothing to do with this. All right, let's go one at a time. We've got a lot of questions. Right now, Judge Wiener's got the question, and then we'll come back. And so, Judge Wiener, to answer your question, one, Louisiana state law makes clear that for the purposes of the desegregation order, the charter school is a part of the parish. And, two, to the extent any new school, any new public school opens up in the parish, it's subject to the desegregation order. Whether that's a new school that's opened by the state or by the local district, any school that affects that parish, is in that parish, is subject to the desegregation standard. What if it's a Catholic school? That's a private school, Your Honor. And here, we're not dealing with a private school. We're dealing with a public school. So it's not any school. It's any public school. Any public school. Yes, Your Honor. Yes, Your Honor. I believe Judge Jolly had a question. Go ahead. I want you to make your argument. I'm sure Chief Judge Stewart's going to give you an opportunity to make all of your arguments. I'm asking too many questions. No, no, you're not. That's why we've got them here. No, go ahead and ask. I'll probably give them some more time. This case is ripe for lots of questions. No, I want to hear what you say. Go ahead. Go ahead. Okay. So, Your Honor, our concern, again, is with the increase in the number of students who would be attending one-race schools and, obviously, the increase in the number of students of one-race schools to begin with. Yes, Your Honor. Okay. For the moment, let's focus on the procedural posture where we are. Yes, Your Honor. You know, we were back further in time, you know, and nothing had happened, you know. The way the case is postured might be different, but as a practical matter, the school opened. So, in some ways, horse out the barn, et cetera, et cetera. So, it comes up to us from the district court, and part of what's appealed to us is to send it back to the district court, because, because. So, just talk to me for a moment about, I mean, the reality that, you know, the school opened, et cetera, et cetera. As I gather, you and the others were still working on the consent decree, et cetera. So, in reality, what's the relief you seek from a procedural posture to go back down to the district court? I think, Your Honor, what we'd like this court to do is, one, to send it back to the district court and require the district court to apply the applicable desegregation standard for a new school opening, to fully consider all of the green factors, and then to consider whether there are reasonable restrictions that could be placed on the charter school to ensure that it is offering students the integrated education that they're entitled to. And those reasonable restrictions can include closing the school, as Judge Jolly pointed out, or it can include things that are far less severe than that, such as subjecting the school to the desegregation standard that the parties adopted for schools going forward. And so, practically, what we want is for the district court, for this court to remand, to instruct the district court to apply the applicable legal standards, and then to make a determination whether or not any further restrictions are needed on the charter school to ensure that it's integrated. What would be your position, what would be your position if the judge says, okay, you're in the desegregation order, and what I'm ordering you to do is to recruit white students and to make this as much of a mixed-race school as we can. And they come back in and they say, Your Honor, we've done everything that you said to try to recruit. We've gone to other counties. We've gone to this parish, and we've gone to this parish as well. And we're not making any headway, but we've done everything that we can do. What would be your position then, if the school remains as it is now? I think, Your Honor, one, obviously, we're not in that position. The charter school opened up. Plaintiffs obviously don't want to open it up. What would be your position? But if that were the position, then it would be the district court's ability to look at all the facts, to look at the facts that would obviously be presented by the charter. What would be your position? And for us, it would depend on the facts, Your Honor. It would depend on the facts, if they had done everything that was included. Outstate the facts. If they had done everything that they could and they weren't able to recruit the students, then it's possible that we would agree that they could go on, but if we don't . . . But it's possible that you would take the opposite position. What is that, Your Honor? But it's possible that you would take the opposite position. It's possible we would take the opposite position, Your Honor. I mean, Your Honor, I, it's hard to say without having all the facts. But obviously, if they had tried and done everything that they could, then the plaintiffs would take that into consideration. But still, it seems to me that you've got the . . . The primary issue that I would see in the case is the unitary status of the parish. That what you're doing is adding one more fully segregated school to the parish. But then that, you know, begs the question that should the . . . Should this independent school district that has no history whatsoever of any racial discrimination or racial bias, or has no record of any unconstitutional conduct in the operation of its school, be subject to the order of a court? That, I mean, it's just, it's a very hard case, really. I mean . . . I mean, Your Honor, I think it's maybe an apt comparison as to this court's decision, Valley v. Rapides Parish, in which Rapides Parish opened up . . . Sorry, state law created a new school district within that parish. And this court sitting en banc said that the new parish that was being created out of the former parish was subject to the same standard that I'm saying is applicable to Greater Grace, which is one, does it increase segregation or does it promote resegregation? And two, are there reasonable restrictions that can be placed on that new district? And so I think that, you know, both the context of new schools and the context of . . . Rapides is not a new school, merely. It's a new school district. Yes, Your Honor, and again, I would say that the examples of the state coming in and creating a new school district from within a district that's subject to a desegregation order, this court and the Supreme Court both have said that those new districts, even though they obviously are being created out of an old district, are still subject to considerations of whether or not . . . how they affect the old district and its efforts to desegregate. How does the . . . unlike the, you know, the earlier days when these cases emerged, you know, we were talking about solely schools that were under the aegis of some kind of local district authority. In this case, the school boards, et cetera, the charters. I mean, back then, you know, we had private schools that were created for white flight and so forth and all of that. But, the charter schools are under the aegis of the Bessie Board, you know, which is a different oversight than in, you know, most of these other cases. So, the first part of my question is, to what extent at all does the oversight authority of the Bessie Board affect at all the calculus? Because, in all the cases we're looking at, we've got the parties in court who have oversight of the cases. We've got the plaintiffs, we've got the local school board, et cetera. So, Bessie's a different, I mean, it's a state created creature. So, it's not just it's another school, but the overall authority and the rules that apply are differently than theirs. So, does that affect, and if so, how? And particularly in terms of how this case is currently postured. Is everybody in the case who needs to be in the case? You follow what I'm saying? In order to effectuate, putting aside for the moment what the relief is, if any, but is everybody in front of the court who needs to be in front of the court in order for any ultimate ruling to bind whatever the actions are? Do you follow me? Yes, Your Honor. I think to the extent the question is, you know, does Bessie need to be here? I think the answer is that Bessie made it very clear, and Louisiana revised statute 17-3991 makes very clear that the state's position is that their charter schools that open up in districts that are subject to desegregation orders are also subject to the same orders. And I also think the state is represented here under Louisiana state law. The parish board is an agent of the state. And obviously the charter is authorized by Bessie, and so I think to the extent the state is represented, the state's position is very clear in its law that these charter schools are subject to the desegregation orders in the districts in which they open. And so I think that all the parties are properly represented and the state's position is very clear. The question there, though, is subject to. What does that mean, subject to the desegregation orders? Are they subject to the desegregation orders as an independent school district that has no history of racial discrimination? Are they subject to the order the same as if they had racial discrimination and had a past of unconstitutional conduct? I mean, it's still subject to. And then you get into the question of whether a federal court order is going to be bound by the state legislature. I mean, it's a hard case. I appreciate your argument. I have two responses to that, if I may, Judge Shawley. So the first, to the extent, you know, the question is state law obviously determines what the boundaries of the school district are, particularly for purposes of desegregation. And so there's no question, again, that the state law has said that the district is subject to the desegregation order here. St. James Parish is still under its never achieved unitary says it's still subject to a desegregation order. And the issue, again, is that the state, if the state were to come in, as it has in other instances, and created a new school or new school district wholesale from an old district that was subject to a desegregation order, that district also has to demonstrate the same things that Greater Grace has to demonstrate, and that the district court failed to consider. The district court didn't consider the application of the green factors here. It didn't consider, you know, whether reasonable restrictions could be placed on Greater Grace. And the plaintiffs believe that that was an error. All right. Mr. Walsh, now you've saved a lot of time. Let's see. Mr. Blanchard. Good morning, Your Honors. I'm John Blanchard on behalf of the St. James Parish School Board. And as the questioning has indicated, the crux of the issue of why we're here is because the district court granted authority for one race charter school to operate in St. James Parish with ongoing desegregation obligations. I would submit that if the local school board had sought to open a fourth school with the racial demographics of the charter school, it never would have been granted authority to operate. Over here, the district court essentially adopted a freedom of choice plan and found that the racial demographics of St. James Parish indicated that it would be a one race school. I briefly want to touch on your question, Judge Jolly, about how if the recruitment, the recruitment issue, about whether the charter school did everything they could, but they were still with 97 percent African-American student body. I would point this court's attention to the Cleveland versus Union Parish case, where Judge James addressed a very similar situation where a charter school requested authority to operate with 96 percent white student body. And Judge James ultimately rejected that charter school because he found that it would be a return to segregated education. However, one year later, after changing the enrollment procedures through the district courts, essentially exempting minorities from the lottery procedure under state law, that charter school was able to come back with a one third minority population. I would submit to the court that that would be a reasonable method that the district court should consider in this case, but it didn't consider any alternatives. It merely held that these students want to go to the school of their choice, which this court has emphatically said over the last 40 years, and most recently in the Cowan decision, that freedom of choice plans cannot be acceptable. Let me ask you about the efforts of this charter school to try to open it up to students of all races. What does the record show in that respect? Well, the record shows here that they advertised, they had community outrage, radio advertisements, but I would submit to you those were the same considerations in the Cleveland versus Union Parish case, and Judge James held that was a return to segregated education. As a practical matter, what would you recommend? As a practical matter, do you foresee the same opportunities open to St. James Parish situation as in the one that Judge James was dealing with? I believe that it could be a possibility, Your Honor. We simply haven't seen that effort beyond there. I mean, is there someplace you can get, say, a third white student? I mean, is there someplace you can recruit them? Well, I would point this court to the Richland Parish case. Your Honor had asked about reasonable alternatives, and in that case, the parties agreed in the consent order that students from the local school board could transfer to the charter school as long as it would qualify as if it were an M-to-M, a majority to minority transfer. That type of consideration could be, should be used in this case as well if the parties were able to agree to it, but that's not what the district court held. The district court merely allowed this charter school to operate, and that's the reason why we're asking this court to adopt standards that district courts should use when considering how to approach the issue of should a charter school be allowed to operate in a parish with ongoing desegregation obligations. As Mr. Ross indicated to you, Louisiana law is very clear that charter schools are subject to the orders, the court orders in the parish that they're operating in. As Judge James stated in the Cleveland case, the state of Louisiana invited the federal court into the charter process specifically to consider how they're going to impact the district court. Okay. Well, I mean, of course, the federal injunction of order would not permit this, would not permit the district judge to order a public school in the district closed in order to populate the charter school with additional persons of another race. Is that where that, I mean, that's where it gets so complicated. What kind of authority would the district court have to transfer students among the district schools into the charter school district? I don't think the district court would have authority to transfer those students. I think the proper question would be, as framed by Judge James in Cleveland, is what impact does the charter school have on the local school board, and does it promote resegregation? And the district court here had no consideration of that. How does it promote desegregation here? I might have misspoke here. I meant to say whether it promotes segregation. How does it promote segregation? Well, I think it's a one-race school in a parish that, as Mr. Ross indicated, St. James has three school boards with over 90% black student population, which we are diligently working with the plaintiffs in this case to fix that problem to the extent practicable. It seems to me that you're taking a little different position in the sense that we heard from the plaintiffs here that the focus was on the benefit to the students, to an integrated education. That's individual students. Here you're talking about a school, a unitary status of the school, and how it affects the unitary status or the goal of the injunction to reach unitary status. Yes, Your Honor. I do agree. The school board does agree with Mr. Ross that it is important to consider how this affects the plaintiff class of students. But our main focus is on the impact to the school board because, as the uncontested evidence below reflects, the local school board is facing a loss of $2 million in the first year of the operation of the charter school and at least one of its schools was facing a loss of 30% of its student population, which I would submit is a very small loss. Why wouldn't the district, could the federal district court order the district to close that school and allow those students that may remain in the school that is diminishing in the district to go to the charter school? If it's subject to the integration orders, does the district court have authority just to move it as if it were a district court, a district under the authority of the district? Well, the district court has broad equitable powers. I would submit that in order to close a school and transfer all the students to a separate public school, charter school would be an abuse of discretion, Your Honor. I think that goes far beyond what the court is supposed to consider, particularly here with the impact on the school board. And the school board, even though it's facing that problem of loss of 30% of students, it's making strides to address the student population there. As Chief Judge Stewart indicated earlier, he was asking about the procedural posture of the case now, and even though it's not a record to inform the court, the local school board has transformed Fifth Ward into the St. Louis Reading Academy to try to attract more students to that school to try to not only increase the white student population there, but to give them a better quality of education. In the charter school? No, Your Honor, in Fifth Ward Elementary. What do you do with the fact that the school is geographically located in your parish but has students coming from other parishes, which I guess your public schools don't or can't? Are you referring to the charter school, Judge Weiner? The charter school has, according to what I read in the record, has students coming there from other parishes. Yes, Your Honor. Of the 171 students that were projected, there were 131 from St. James Parish. But I would say that the charter school is not geographically isolated within the parish. It's in Vachery, and its location is actually four miles from Sixth Ward and approximately four miles from Vachery Elementary. It's pretty centrally located on the West Bank. I see I'm out of time, Your Honors. If there are no additional questions, we pray that this court adopts the pragmatic legal framework of the Cleveland v. Union Parish case. I want to ask you one question, if I may. Some charter schools succeed, others fail. Some charter schools are successful, others are quite unsuccessful. Is there any kind of record as to whether this charter school is thriving where it is? I'm not aware of anything in the record that shows that it's thriving, Your Honor. Well, my question to you is sort of back to what it was otherwise. We've got these 35,000-foot altitude questions about standards and so on and so forth, but this matter is up before us coming up from the trial court, which the principal claim is that the district court failed to do this or did that. In the threshold sector of the case, where there is broad jurisdiction, so I'm not quite sure how much law it is our panel is primed to provide, quote-unquote, as opposed to trying to really look at the procedural posture. As I said, here school is allowed to operate, and so it is operating. So my question to you, like I did to the other, is sort of a practical one before greater grace comes up. The reality is, assuming we were to send it back to the district court, what's the instructions you're advocating come from here to the district court to then look at all these? Because there have been no determinations about sort of anything down below. Is it you, like them, looking for us to remand it back to the district court? If so, what are the instructions and guidance to the district court of what it is to do? Just look to the Cleveland case, or is there more? The Cleveland case is the leading case in the Louisiana district courts as to the standards, and I would submit to this court that we would ask them to adopt that framework. That framework is practical within the desegregation context because it asks three questions. First, whether the charter school has complied with the standing desegregation orders in the case. Second, how it impacts the local school board or if it promotes resegregation. And third, whether there are reasonable restrictions that could lessen this impact. I think that remanding it back to the district court with those standards would greatly assist not only this court, but other district courts that have been grappling with this problem for the last decade. As Judge James recently stated in the Lincoln Parish desegregation case, over the last decade he's asked attorneys to give him any other authority on how to handle issues that arise with charter schools, and the only case that the attorneys have cited for him is his own opinion. Secondly, I would ask that this court hold that the freedom of choice plan that the district court essentially adopted is unacceptable in this case because there was no finding that such a plan would work. And this court in Cowan has explicitly stated that the district court has to show that these types of plans will work. While this court could very well close the school, I think remanding for a full hearing on not only the impact of the loss of money on the school board, the impact of loss of schools, what restrictions could be placed on the school board, I think those instructions would be particularly helpful to the district court in considering this case. All right. We'll hear from Greater Grace. Mr. Higgins? May it please the court. Michael Higgins on behalf of Greater Grace Charter Academy. Your Honors, this case has been pending for 52 years in the district court. Throughout that time, the local school district has made little progress in terms of achieving unitary status. In fact, the district court's opinion or ruling in the matter at hand stated that their efforts have been nominal at best. Is there a private school in this parish? I believe there is. That's not on the record, however. In terms of- It's not, you know, new news, Mr. Higgins. You know, there are many of these cases in the state and otherwise where the board and nobody else has asked for unitary status. That's just as a practical matter because there's things going on, they work it out, et cetera. So there are plenty of these where there's been no unitary. I mean, so the history of it doesn't really tell us a lot except that this has been going on a while. That is correct, Your Honor. However, what I would mention is that one of the primary goals of desegregation litigation is to restore students to the position that they would have been in, in the absence of the unconstitutional discriminatory conduct. If you look around the state of Louisiana, there are many districts that are not subject to desegregation litigation because either they've achieved unitary status or they never were subject to a court desegregation order. In those parishes, charter schools are free to operate so long as they meet all of the requirements put in place by the Bessie Board. These schools, as stated in the statute giving rise to them, provide innovative learning opportunities for, in particular, at-risk students. Well, it's the viability of charter schools is not, you know, it's not front and center as the issue here. You're right. There are a lot of, but I mean, that's just like saying, you know, there are lots of states in which, you know, there weren't these lawsuits. So, yeah, I mean, that's true, but it doesn't prove anything. So there are those like here where there was a desegregation order that was under federal jurisdiction that existed. And so the charter schools sort of entered the picture subject to that being the case, right? That is right. All right. So here, greater grace emerges when there is an existing, you know, court order, desegregation order in there. And I take it you don't disagree with counsel's assertion that the state law otherwise says a charter school or, I guess, any other school created by Bessie is subject to whatever else governs schools, right? Yes, Your Honor. In terms of the particular statute at issue, I would say that for Type 2 schools, it is not entirely clear on its face. Counsel earlier mentioned that the statute states the charter school shall be subject to the desegregation order, in effect, for the parish or district where the school is operating. It actually does not contain the words is operating. It just states that it will be subject to the desegregation order for the parish or city school district. The question for a Type 2 charter becomes what happens where they are attracting students from multiple parishes that may or may not? Type 2. Pardon me, Your Honor? What's the Type 2? The Type 2 charter school is a charter school that is authorized directly by Bessie, funded directly by the state, and is allowed to admit students from anywhere within the state. They aren't limited to a particular school district. So with a Type 2 school district, they may be operating in multiple parishes, or they may be attracting students from multiple parishes. There could be three very different desegregation orders, in effect, for those parishes. The charter school, for example, in the present matter at Greater Grace, it could be located just across the parish line, have the exact same students, yet still potentially be subject to one desegregation order or the other. It's not exactly clear on its face. I would argue that this ambiguity does need to be resolved, whether that's through the legislature or through the present court. But in general, I would say that what needs to be determined is what is best for these students and what is going to put these students in the position that they would be in, in the absence of the district's unconstitutional behavior. I would argue that a— That may be the altruistic goal, but just as a practical judicial goal, I mean, the question here is how do you interfere with the district achieving a unitary status? And the students, that's another matter for the teachers to take care of as far as the courts are concerned, it seems to me. I mean, that's our goal. I mean, we certainly want that to be the goal. But the question here is how you— is that you've created a fourth all-race school when the district now has only three. And that would seem to indicate that it interferes with the unitary achievement of the goal of a unitary status in the schools, in the district. Now, I don't know what that means beyond that because you have all kinds of legal complications that follow. And you've heard what your opposition says about this. So how do you respond to that? I mean, that you are—I mean, it's almost undeniable that you are interfering with the goal of acquiring unitary status. My position would be that the charter certainly impacts the ability of the district to achieve unitary status. However, as you mentioned earlier, Greater Grace has never engaged in any sort of discriminatory behavior on its own. Well, as a very shallow matter, it is helping the parish achieve unitary status because it's taking 100 percent minority students. So that means the other percentages have to go up. That would be a practical consideration, Your Honor. I would certainly compare the opening of this charter school, for example, to an opening of a new housing development, perhaps one just across the parish line that takes a large number of students out of the district. What do you have to say about their argument that we should instruct the district court to follow Judge James and his handling of the charter school in that district? Well, I would say that all the prior litigation involving what steps a district needs to take to achieve unitary status deal with the insular nature of that district itself and what that district is or is not doing. This charter school, and I would argue all type two charter schools, are a separate external factor that are not a part of this district system. They have not taken away any part of the tax base for the parish district school. They haven't taken a building away from the district. They haven't taken any land. They haven't taken students out. You do affect the income, I mean, per student, don't you? They lose money. Every time somebody, one of the potential students at the district school goes to your school or goes to the charter school, they lose money, right? They do, Your Honor, because schools are paid on a per-pupil basis. I would argue, though, that if a student moved to another parish or if a student attended a virtual online charter school, the school district would also lose that money in that situation. The suggestion is, I don't know whether it has been expressly stated, but the suggestion is that the charter school here has had the effect of losing $2 million that should be available to the district schools. Do you have a comment on that? My comment to that, Your Honor, would be that had the students chosen to remain within the district system itself, then they would be entitled to that funding. But if the students are no longer attending the district school, the district should have no claim to that funding. Again, it's a per-pupil basis, and if the pupil is not in that school, they should have no claim to that fund. What's the objection of Greater Grace to the district court having to consider the green factors and all the other options that are possible? I mean, Greater Grace may come out no worse than it is, for want of a better way to put it, or its status may be unchanged. But given the reality that there is a pending decree in federal jurisdiction, and the reality that notwithstanding your parts of the language, the Bessie statute says, quote, it's subject to the same rules, so to speak. So what's the objection, legally, I guess, of the district court having to apply the calculus of green and union pairs, et cetera, in order to ferret all this out? Your Honor, I would argue that the green factors in particular, while we did cite those in our own motion in the trial court, those were tailored to deal with a district that has previously been found to be legally segregated. Okay, all right, I see how you want to do, Mr. Higgins. I mean, you know, I get it. Okay, everything's different, and I get all that. But the reality is, in Cleveland Union Parish, you're talking about a rural district. I mean, you're talking about priority segregation, and you're talking about one where, yeah, it's all different, and I get it. You can distinguish to the hilt, you know, each one of these. But the reality is, if the best statute said charters don't have to be subjected, that's one thing. But you're not arguing that it's not, and so my question to you is, what is the objection, legally, to greater grace being backed down in the district court and subject to the district court taking into account all the factors, including the arguments you make about its effect or not on a unitary status? I can't say that I have an objection necessarily to returning to the district court with appropriate standards given by this court. In terms of Greene specifically, however, I do think that a more appropriate standard for a charter school would be simply assessing whether that school has, in good faith, attempted to open up in a non-discriminatory, non-segregated manner. I believe that the Greene factors, again, and I have no need to jump into those once more, Your Honor, but I do think that they are distinguishable as applied to a segregated school district. Well, every parish is different, and the decrees basically say the opening of any school, and it's not predicated that you have to have opened it with mendacity racially in order to do it. It says any school, and so it's in effect. What is the effect of it? So there's no showing that greater grace had to have been created for the purpose of furthering segregation, but the reality is there's an existing decree in a district in which the schools have not been deemed unitary, so it would seem to follow the opening of any school. In this case, it's a charter school, but it could be, I don't know, some kind of magnet school or any of the many kinds of schools that were opened in the 80s in order to deal with the desegregation calculus. Here it's a charter school, so the question is, given it is a school that was created, but in the milieu of where there's an existing desegregation decree, why should it not be subject to the district court evaluating all the factors? Your Honor, I do agree that as the statute currently stands, despite the ambiguity and despite the fact that there is not necessarily a straight correlation between Green and the charter school, I do think that the lower court does have the ability to assess whether the charter school itself will be segregated and whether that charter school will have any unconstitutional discriminatory behavior on its own. I would argue, again, however, that the charter school's behavior, as opposed to the behavior of the school district that has been found to be unconstitutionally discriminatory, I believe that's comparing two very different things, and they should not necessarily be held to the same standard. It's not comparing two different things. It's saying you're entering, you, your client, is entering a school arena in which there is an existing decree that is predicated on past discrimination, right? Correct. Okay, so if you're opening a school within that milieu, it's not a saying that has to be shown that greater grace has done it, but if you're entering into and had a potential to affect the achievement of the unitary status, unless you're citing a case or a statute that says expressly charter schools get a pass, then I'm trying to understand the position of greater grace not to be subject to the district court evaluating all of it. I'm not asking a question that suggests that greater grace be closed or any of that, but just that it does not appear, at least to me, that the district court took into account all the relevant factors in terms of the populations, the multi-parish nature of it, attracting kids from all over, it being a type two, et cetera. It just seems that the district court says, well, it's another one-way school. It's no worse than it was, and I'm having trouble with how that's sufficient legally. Yes, Your Honor. I would say that I would rely on, and this is not strictly a desegregation case, but the parents involved in community schools case that the Supreme Court handed down a few years back. In that case, the court found that a school system that was not subject to a desegregation order because it had not engaged in unconstitutional behavior or because it had previously achieved unitary status could not use racial factors in terms of assigning students to particular schools or not allowing students to attend other schools. I would say that Greater Grace is in a similar situation because Greater Grace has not engaged in this unconstitutional behavior. Greater Grace has attracted students from several different parishes, and these students, if the green factors are fully applied and limitations are placed upon this charter school, the students who are not typically subject to this desegregation order would be affected. As a practical matter, though, is there any way, is there any source from whom you can draw on to increase the wide population of your school? Your Honor, that would primarily have to come from the district schools themselves, be it St. James Parish district schools or neighboring parish schools. I suppose that there could also be homeschool students, the numbers of which I do not have, or there could be students who would leave a local private school. In any event, you're going to draw, whenever you draw white students or black students, there will be an argument that can be made with respect to either one of these sources that you're diminishing the chances of a unitary school system. Yes, Your Honor. I mean, there's not much way you can survive, really. I mean, it seems to me, if you're such a... Does the record reflect the student population of the parish by race? Yes, it does, Your Honor. Overall, in terms of those students enrolled in the district schools. I mean, including private schools. I don't believe that's in the record, Your Honor. In terms of the district's demographics, 63% is my understanding of what that overall number is, and 93% African-American was greater graces enrollment at the time, the argument below. But nothing shows the parish population of school-age children? No, Your Honor. All right. Now, if you are subject to the integration injunction of the order of the desegregation order of the court, what provisions of that injunction do you fear would do the most damage to the success of your school? I certainly believe that some of the proposals put forth by counsel earlier would have a severely negative effect on the school, limiting students' ability to transfer out of certain district schools and attend greater grace charter academy would put potentially a very large crimp on the flow of students into the charter school, and that could very well affect the charter school's survival. If they are unable to attract a sufficient number of students, they simply won't be able to continue operations. So you're saying that any kind of desegregation order that would require you to increase your white population would be impossible to achieve? I wouldn't say that it would be impossible to achieve, and certainly the school has taken many steps to increase its white population. The school does agree that there are benefits to children attending an integrated school. The question is whether there should be strict guidelines and limits placed upon that by a court for an actor that has not previously acted unconstitutionally. And I do see I'm out of time, Your Honor, but I would certainly be happy to answer. The red light wouldn't free you if I had another question, which I do. You keep saying that, but is it your view that your client is somehow insulated from further orders of the federal district court because of the absence of showing of invidious racial discrimination by it as an entity? Is that your view? I would take that position, Your Honor. Well, that's kind of what I thought you were saying. So what's the legal authority for that position? Your Honor, I honestly do not have a case that is strictly analogous to the current matter. Again, I would fall back to parents involved in community schools and the fact that limitations that were put in place. That's a pretty heady proposition, and that's why I squared you up with it. Because you keep saying that, and that keeps resonating with me as a pretty bold proposition, unless you've got a case that expresses, you know, it's like we're in but we're out. And you acknowledge being subject to the decree, but we're in but we're out. And I'm just wondering what the—I read it differently. The obvious theory of what you're saying is that the charter district is an independently created district that never has existed before and has committed no unconstitutional violations of any kind. Now, if the court comes in and merges them and says those districts don't make any difference as a matter of law, then you lose your argument. You are not free from bearing the burdens of the unconstitutional violations that this other district has committed because they've merged you together and made you guilty of the sins of the people that are in the other district. And you're saying that's unfair, is what you're saying, or legally not permissible, which may not be right. That is correct, Your Honor, yes. That's the position that we are taking. And I would certainly say that had the district authorized the charter school, there would be no question that would be subject to the decision. How do you order—if the district is truly independent, how do you order a district that has committed no constitutional violations to remedy violations that they have not committed? That is exactly our position, Your Honor, yes. You see whether it survives or not, whether an argument survives. All right, Mr. Higgins, thank you for your briefing and your argument. Back to you, Mr. Ross. To answer the question that was, I believe, being presented, plaintiffs have a number of cases, one of which was not specifically cited in our brief, and so that is Valley v. Rapides, again, 173 F3D 944, which is a case, an en banc case in which the Fifth Circuit reaffirmed the fact that if the state, which is the original bad actor in this case, were to come in to create a new school district in the same way— The state is not the original bad actor. In this particular injunction, it is the district. Well, Your Honor, it was state law that required the district to desegregate. Again, the state, the parish is the original state. We can go back and back and back and back, but I'm talking about this injunction. It does not enjoin the state of Louisiana from doing anything, as far as I know. It enjoins the district to do this and not to do this. Well, Your Honor, it enjoins public schools that are opening in this district, and that is what the plaintiff's concern is. Again, this is a public school. But the injunction—in other words, they can violate—if the injunction is violated in the most egregious kind of way, the governor of the state of Louisiana is not going to jail. The person that's going to jail is the head of the school board in that district. So that's who the injunction— That's a fair representation, Your Honor, but again, I would point out that this is— that the vast majority of the students are coming from St. James Parish, that there are students who are entitled to an integrated education, and that there are students who are being deprived of that, as well as obviously the— But there are students that are now being deprived of it. They are being deprived of an integrated education, Your Honor. Right now. I mean, operating under this injunction, many of the students of this parish are being denied an integrated education. You have three single-race black schools. Those children are being denied an integrated—as it is. You're absolutely right, Your Honor, and that's why the plaintiffs and the board have entered into a consent decree which promises to desegregate those schools. So if the court says, okay, I have jurisdiction over this whole thing, I'm going to order the district here to close these black schools here, and the black school that we will operate will be the charter school. What is your position of that? There are still, say, even fewer people that are being deprived of an integrated education, and you have fewer all-race public schools available to the children of St. James Parish. But, Your Honor, you know, I hate to resist your hypothetical, but here, again, we do have a consent decree in which students in the parish— the hope is that that consent decree will lead to the desegregation of those schools. Well, it's a hope of 52 years that's not been achieved. Well, Your Honor, you know, there are obviously— Actually, I mean, I think the school's doing pretty good in some ways. I mean, it looks to me like the parish is affording a lot of people an integrated education. The parish has opened magnet schools that have been successful over the last 10 or 15 years, and obviously we're hopeful that this new consent decree will address that. But I did want to address a few other issues that came up from Mr. Higgins. So plaintiffs obviously believe that the green factors are applicable here. There's no question that the green factors are a flexible standard in which the district court can take a number of things into consideration, and so it should be applied in the same way that they would be applied to any other case. But do you agree the role model is Judge James? What was that, Your Honor? Did you agree that the role model is Judge James? We believe that the Union Parish case accurately applied this court's precedent in regards to new schools opening. So Judge James, plaintiffs believe, didn't create a new rule. He simply applied the same rules that the Fifth Circuit has applied to any other new school that opened up or, again, any other splinter district that were to open up within the same parish. Plaintiffs obviously agree that it's undeniable that the opening of this new charter school would result in further segregation, and they believe that the court should remand this issue, providing the district court with the applicable and proper standards and instruct it to place reasonable restrictions on greater grace. What are the total number of schools in the parish? At this point, I believe there were six, and now there are seven, I believe, or elementary schools, Your Honor. But then there are two high schools as well, so nine total. But I thought I read, okay, elementary schools, seven elementary schools. There are seven elementary schools, including greater grace, and then two high schools, so nine total. Most, I thought I read, were racially diverse, but there were the three that were 95%. Prior to greater grace opening, there were the three that are one race, and then there were three that were more racially integrated, including the Successful Magnet Program, and then the two high schools, which are racially integrated. All right. Thank you, Your Honor. All right. Thank you, both sides, for the briefing and the argument.